Cite as 2023 Ark. App. 69

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-550

| | |
|---|---|
| KIMBERLY GONZALES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered February 15, 2023<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT<br>[NO. 63JV-20-206]<br><br>HONORABLE KEN CASADY, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Kimberly Gonzales appeals the June 2022 circuit court order that terminated her parental rights to her two sons, both born in 2016.[1] Kimberly argues that the circuit court clearly erred in finding that the Arkansas Department of Human Services (DHS) proved statutory grounds against her and that it was in her sons' best interest to terminate her parental rights. We affirm.

DHS took emergency custody of the boys in December 2020 because they were found outside in the neighborhood with very little clothing on and with no adult supervision. Kimberly was not the custodial parent at the time of their removal from their father.[2] The

---

[1]The circuit court also terminated the parental rights of the father, Albert "Jesse" Gonzales, but he is not a party to this appeal.

[2]There was a prior DHS case open in 2017 against Kimberly for inadequate supervision and failure to thrive. The children were removed from her custody and placed

children tested positive for illegal drugs on a hair-follicle test. Kimberly hired private counsel to represent her. The children were found to be dependent-neglected in a March 2021 adjudication order. At that point, Kimberly was not fit to have custody or visitation with her sons because there was an existing order of protection in a different case, but that order was later set aside.

By May 2021, Kimberly had made some progress and was attending supervised visitation. She had completed a drug-and-alcohol assessment, which recommended inpatient treatment. By early November 2021, Kimberly had made more progress, was in counseling, had completed twelve hours of parenting classes, had passed a drug test (although she had refused a urine drug screen during this review period), and was attending visitation. She still needed to complete a psychological evaluation, another drug test, and inpatient substance-abuse treatment. Kimberly did not believe she needed inpatient drug treatment, instead blaming her problems on her abusive husband. At the end of 2021, the goal was changed to adoption or relative placement. The circuit court recognized that Kimberly had made some progress and had somewhat benefited from the services offered to her, but she had not made significant, measurable progress in the previous year nor had she gone to inpatient treatment.

In December 2021, DHS filed a petition to terminate parental rights noting that for months Kimberly had resisted inpatient drug treatment, she had three different addresses in

_____

in the custody of their father. A protective-services case remained open until DHS removed them from the father's custody in December 2020.

2

the previous year (living with friends or relatives), she was not employed at any point, and she still interacted with her husband (the boys' father) despite their very volatile and abusive relationship. The boys were four and five years old at this point. DHS also alleged that Kimberly did not stay in consistent communication with DHS. At times her phone was disconnected, or she did not answer the phone. Visitation never progressed beyond supervised visits. At the request of the attorney ad litem and the children's therapist, visitation was suspended altogether in February 2022, after which the children's behavior improved.

At the March 2022 termination hearing, Kimberly said she was living in a domestic-violence shelter but could only stay there for six months. She said she was no longer in a relationship with her husband, although she had told the court earlier that she was unable to stay away from him because of her "big heart." She said she had just started a job that week. She admitted that she was struggling with her own substance-abuse issues when the boys were taken into DHS custody, and she admittedly altered a February 2022 drug screen because she would have been positive for methamphetamine. This meant she had relapsed after finally submitting to inpatient drug treatment. Kimberly acknowledged having missed all her prior appointments for a psychological evaluation. Nonetheless, Kimberly believed she should be given more time to work the DHS services.

The DHS caseworker, Toni Hansberry, stated that DHS had provided meaningful efforts toward reunification, but Kimberly had ongoing issues with unstable housing, inconsistent contact by phone, and failure to attend appointments made to provide her

3

services.  Hansberry believed that Kimberly's volatile and ongoing relationship with her husband posed a risk to themselves and to the boys.  She opined that termination of parental rights was in the boys' best interest, and there were no significant barriers to adoption.  The boys' fighting and defiance had improved, and they continued to attend speech, occupational, and physical therapy.  Hansberry expressed concern that Kimberly waited so long to enter inpatient treatment and then relapsed after treatment.  She said there was no other service that could be offered to help Kimberly with reunification.  Hansberry thought that the children would be exposed to potential harm if the court did not terminate parental rights.

The circuit court found that DHS had proved by clear and convincing evidence multiple statutory grounds for termination (including the one-year-failure-to-remedy ground, the subsequent-other-issues ground, and the aggravated-circumstances ground)[3] and that it was in the boys' best interest to terminate their mother's parental rights.  The circuit court entered a detailed order, and this appeal followed.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child.  *Gilbert v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 256, 599 S.W.3d 725.  The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis,

---

[3]Failure to remedy (Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2021); subsequent other issues (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)); and aggravated circumstances (Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*).

includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

Kimberly first argues that none of the three statutory grounds were proved against her. Only one ground is necessary to terminate parental rights. *Henry v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 63, 639 S.W.3d 924. We focus on the aggravated-circumstances ground wherein termination may be ordered when "there is little likelihood that services to the family will result in reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. Kimberly argues that she should have been offered more services and given more time before termination of her rights. She also complains that she was not offered any services between February 11 and March 28, 2022 (when the termination hearing was conducted).[4] We hold that Kimberly has failed to demonstrate reversible error.

---

[4] The February 11 termination hearing was continued to March 28, 2022 to allow DHS to effectuate service of the petition on the father. Also on February 11, Kimberly requested and was appointed counsel.

The DHS caseworker testified that there were no other services that had not already been offered to Kimberly throughout this year-long case. A child's need for permanency and stability may override a parent's request for additional time. *See Collier v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 100, 641 S.W.3d 67. Moreover, the circuit court found that Kimberly "failed to show that she has benefited from the services offered by the Department." She missed multiple referrals for appointments, and she did not believe she needed drug treatment until she finally attended at the end of 2021. She relapsed shortly after her inpatient rehabilitation, had no home, and had just started a job. With this evidence before it, the circuit court did not clearly err in finding that the aggravated-circumstances ground had been proved.

Kimberly next argues that the circuit court clearly erred in finding that termination of her parental rights was in the children's best interest. Kimberly does not challenge the finding that the boys would face potential harm if returned to her custody, but she does challenge the finding on adoptability. Adoptability and potential harm are merely factors to be considered; they are not elements of the cause of action and need not be established by clear and convincing evidence. *Alexander v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 345, 634 S.W.3d 807. Rather, after considering all the factors, the circuit court must find by clear and convincing evidence that termination of parental rights is in the best interest of the children. *Id.* The Juvenile Code does not require magic words or a specific quantum of evidence to support a trial court's finding regarding adoptability. *Id.* It merely requires that if an adoptability finding is made, then evidence must exist to support it. *Id.* A caseworker's

testimony stating that there are no barriers to adoption is sufficient to support the adoptability factor. *See Stroup v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 387, 653 S.W.3d 28. The circuit court acknowledged that it considered the boys' adoptability, and the caseworker testified that there were no significant barriers to their being adopted. Kimberly adds that there was no testimony about keeping the boys together, but this issue was never raised to the circuit court and is not a required matter of proof absent evidence of a genuine sibling bond.

We have conducted a de novo review of this record giving due regard to the credibility assessments made by the circuit court and the weight it decided to give the evidence before it. We hold that the circuit court did not clearly err in terminating Kimberly's parental rights.

Affirmed.

HARRISON, C.J., and GLADWIN, J., agree.

*James D. Bornhoft*, for appellant.

*Marc D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.